## Middleton v. Skaggs et al.

(Decided March 6, 1936.)

W. J. FIELDS and JESSE K. LEWIS, and HANNAH, VAN SANT & McKENZIE for appellant.

SAM SPARKS and H. C. ROSE for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Reversing.

Joseph Middleton, a resident of Elliott county, died, leaving the following will:

"I, Joseph Middleton, being of sound mind and disposing memory, realizing the uncertainty of life and the certainty of Death, hereby make and publish this my last will and testament, hereby revoking all others.

"First: I will and bequeath to my Son, Van Middleton the sum of $1.00 to be his share of my estate.

"Second: I give and bequeath to my daughter, Mary Belle Skaggs the sum of $1.00 to be her share of my estate.

"Third: I give and bequeath to my son, J. H. Middleton, the sum of $1.00 to be his share of my estate.

"Fourth: I give and bequeath to my son, J. O. Middleton, the sum of $1.00 to be his share of my estate.

"Fifth: I give and bequeath to my beloved wife, Sarah Jane Middleton, who has helped me through these years all my estate, both real and personal including all lands, money, notes and accounts.

"Signed the 6th day of October, 1932.

"[Signed] Joseph Middleton.

"Attest:

"J. B. Ison

"J. P. Clevenger [Signed]"

The county court refused to probate the will on the ground that it had not "been acknowledged, attested and witnessed according to law." On appeal to the circuit court, the jury found against the will. The propounder Sarah Jane Middleton appeals.

The testator was married twice. There were born of his first marriage several children, four of whom are now living, viz.: Mary Belle Skaggs, Ollie Middleton, James H. (Jim Hen) Middleton, and M. V. B. (Van) Middleton. One of the sons of the first marriage was Cliff Middleton, who was a World War veteran, and carried a war risk insurance policy for $10,000, in which his father, Joseph Middleton, was the beneficiary. Cliff died in 1921, unmarried and intestate, leaving his father, Joseph Middleton, his only heir.

In 1906 testator married the propounder, Sarah Jane Middleton, by whom he had two children, one of whom was living with his father at the time of his death. The testator's estate consisted chiefly of the unpaid portion of the insurance policy carried by Cliff Middleton, deceased, which amounted to $5,055.

The only contestants of the will are Mary Belle Skaggs, Ollie Middleton and James H., children of the first marriage.

Mental incapacity was the only question submitted to the jury, and appellant contends that her motion for a peremptory instruction should have been sustained on the ground that the evidence for contestants was without probative value. The evidence is as follows: Mary Belle Skaggs, who saw her father every few months, testified that from his actions and conversation when she was with him the condition of his mind was "bad." Her reasons were:

"When he come to my home he would talk

about going to Charley's and would like to go to hear a good meeting, and the next time he would not recollect anything about hearing that fellow preach, and he would say, 'I never heard that fellow preach,' and he would just talk on.''

Ollie Middleton, 44 years of age, who saw his father nearly every day, testified that his father's health was bad, and that from his actions and conversation he was of the opinion that his mind was ''bad.'' ''He would talk off maybe a few minutes about something happening forty years ago.'' His father never failed to recognize him when he saw him. He went to town with his father the day the will was written. When his father passed Sim Holbrook's, who lived next to him, his father asked who lived there, and he (witness) told him. Jim Hen Middleton, who saw his father a few times during the year before he died, testified that from his conversation and actions he was of the opinion that the condition of his father's mind was ''bad.'' He did not recognize the wife of witness. ''His mind was bad because of his talk.'' Speaking of the testator, Jennie Nickells, an aunt of the contestants, testified that sometimes the testator had a good mind, and ''sometimes he would talk off on things I never heard of.'' ''Just a few words, then be off.'' From association with him and hearing him talk, the condition of his mind was ''bad.'' Bird Nickell, a cousin of the contestants, testified that he knew the testator the last four or five years of his life, and in his opinion the condition of his mind was ''bad.'' ''At times he would talk, seemed as though he had a good mind, and then again he would talk off.'' ''Sometimes it would last longer than others, sometimes he would be talking off on something else and then at times he would talk in his right mind a long time.'' He thought he saw the testator about a week before the will was executed. On being asked to tell the jury anything the testator said or did that would indicate that his mind was affected witness said ''I could not tell you any subject he talked on.'' ''His mind was bad at times not a crazy man.'' Eff Skaggs, brother-in-law of Ollie Middleton, gave it as his opinion that the condition of the testator's mind was ''bad at times.'' The reason for his opinion was that sometimes the testator would know him and other times he would not know him. According to Henry Mabry, appellant's brother-in-law, who was not friend-

ly toward her, the condition of the testator's mind was "bad." His reasons were:

"I would meet up with him and he would not know me, and one day I met him and he said, 'Why don't you come down?' and I said 'You come down' and he said 'I ain't got mind enough to go anywhere or do any business."

Another reason was that as they passed Sim Holbrook's testator asked Ollie who lived there and said, "I don't recollect being there. It is a strange place to me." Also as they went back "he was singing and trying to dance."

On the other hand, appellant and her daughter, and eleven other witnesses who knew the testator well, testified as to the soundness of his mind and expressed the opinion that on the date of the execution of the will he had sufficient mind to know the natural objects of his bounty, to make a rational survey of his estate, and to dispose of it according to a fixed purpose of his own.

Where the facts relied on are insufficient to show mental incapacity, the opinions of nonexpert witnesses based thereon are likewise insufficient for that purpose. Schrodt's Ex'r v. Schrodt, 181 Ky. 174, 203 S.W. 1051. All that we have in this case is that the testator did not recollect that he had heard a man preach, "that he would talk off maybe a few minutes about something happening 40 years ago"; that he passed Sim Holbrook's, whose farm was next to his, and asked who lived there; that he failed to recognize the wife of Jim Hen Middleton; that "sometimes he had a good mind and sometimes he would talk off on things I never heard of"; that "at times he would talk—seemed as though he had a good mind—and then again he would talk off"; and that he said, "I ain't got mind enough to go anywhere or do any business." In short, we have only a few lapses of memory and a failure to recognize persons and places on the part of a man advanced in years, and whose eyesight was bad. If this were sufficient to show mental incapacity, it would put it out of the power of every old man to make his will. Clearly the facts relied on do not tend in the least to show that at the time of the execution of the will testator did not have sufficient mental capacity to enable him to know the natural objects of his bounty, his obligations to them, the character and value of his

estate, and to dispose of it according to a fixed purpose of his own. It follows that the trial court should have sustained appellant's motion for a peremptory instruction.

Judgment reversed, and cause remanded for a new trial consistent with this opinion.